ROVNER, Circuit Judge,
dissenting.
The majority “cannot say that the Wisconsin Supreme Court unreasonably applied federal law when it held that the trial judge conducted an adequate, although minimal and not a model to be followed, step-three inquiry into Lamon’s Batson claim.” Supra, at 1101-02. But on this record, there is no indication that the trial court ever engaged in any step-three anal *1103 ysis under Batson. Because the trial court engaged in no step-three analysis, I believe that the Wisconsin Supreme Court unreasonably applied federal law and I therefore respectfully dissent.
The trial court said precious little on the Batson issue, so little that it is worth repeating. As the parties began to strike jurors, defense counsel asked to be heard in chambers. The court began the hearing by asking defense counsel, “What’s the problem?” Tr. at 24. Counsel then lodged his Batson challenge. Addressing the prosecutor, the court verified that the juror in question was the only black juror on the panel. Tr. at 25. The court then stated, “And as I recall you did not even ask him any individual questions. Do you have some reason for the strike?” Tr. at 25. The prosecutor offered her reasons, citing among other things, the report on police contacts at the juror’s address. The court asked the clerk to mark the report as an exhibit. Tr. at 25-26. After the prosecutor offered an additional reason for the strike, the court solicited a response from defense counsel. Lamon’s lawyer noted that the stricken juror had a common last name, and that the prosecutor could have questioned him individually if she truly was concerned that he was a member of the family listed in the police report. Tr. at 25-28. The prosecutor then noted her concern that the juror “was not responding to the questions on voir dire and was not being completely forthright and honest.” Tr. at 28. The court asked, “Specifically what questions are you referring to, counsel?” Tr. at 28. The prosecutor noted that juror Bell failed to raise his hand in response to her question regarding whether any relatives or close friends had been a victim of a crime. Tr. at 29. Defense counsel again noted that the prosecutor could have questioned juror Bell about her concerns but did not. Counsel then asked the court to voir dire juror Bell before allowing the strike. Tr. at 29. The court then asked the prosecutor, “Any particular reason, Mrs. Bollen-dorf, why you didn’t make specific inquiry as to the juror as to some of these matters?” Tr. at 29. She replied that she did not think the juror would be any more forthcoming when questioned individually and that she did not wish to appear to be singling him out. The court then ruled, “Well, I think the State has made its case and it does have just cause for the strike.” Tr. at 29-30.
To sum up the trial court’s entire Bat-son analysis:
Step one: “What’s the problem?”
“[T]he only black juror is the one in question.”
Step two: “Do you have some reason for the strike?” “Any particular reason ... why you didn’t make specific inquiry as to the juror as to some of these matters?” “Well, I think the State has made its case ...”
Step three: “... and it does have just cause for the strike.”
At step one, a defendant must make out a prima facie case of discriminatory jury selection. Miller-El v. Dretke, 545 U.S. 231, 239, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005). Given that the State used its first peremptory challenge to strike the sole African-American venireperson, the trial court assumed the prima facie case was shown, and the State did not object to that assumption.
At step two, the burden shifts to the prosecution to come forward with a neutral explanation for challenging jurors within an arguably targeted class, in this case, African-American members of the jury pool. After the prosecutor offered her reasons, the court found that “the State has made its case.” Miller-El, 545 U.S. at 239, 125 S.Ct. at 2324.
*1104 At step three of the analysis, “the trial court then will have the duty to determine if the defendant has established purposeful discrimination.” Miller-El, 545 U.S. at 239, 125 S.Ct. at 2325. But instead of determining whether the defendant established purposeful discrimination, the court said that the State “does have just cause for the strike.” This is not a step-three analysis; it is a statement that indicates ignorance on the part of the trial court regarding its duty at that stage of the proceedings. The burden at this step belongs to the defendant, not the State. And “just cause” is a phrase that courts use when analyzing strikes for cause, not peremptory strikes. Nowhere does the court acknowledge its duty at step three. Nowhere does the court actually indicate that it has determined whether purposeful discrimination has taken place. In other words, there is no step-three analysis at all, and the court’s comments indicated only utter confusion about the Batson analysis. In the complete absence of any step-three analysis, it was unreasonable for the Wisconsin Supreme Court to find a “minimal and not a model to be followed, step-three inquiry.” The analysis was not minimal; it was nonexistent. And it was not a model because, if any analysis occurred, it is invisible in the record.
Had the trial court conducted a step-three analysis, it might have noticed, as the Supreme Court did in Miller-El that the “State’s failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.” Miller-El, 545 U.S. at 246, 125 S.Ct. at 2328 (quoting Ex parte Travis, 776 So.2d 874, 881 (Ala.2000)). The prosecutor’s repeated refusal to question juror Bell about her concerns was evidence that her race-neutral reasons for the strike were a sham. Had the trial court engaged in a step-three analysis, it could have compared juror Bell to the white jurors selected for the panel so that it could determine whether the prosecutor ran criminal background checks on any of them, whether they lived in high crime neighborhoods, and whether they had questionable work histories, all reasons the prosecutor used to strike juror Bell. It is especially ironic that the majority distinguishes Miller-El on the grounds that we have no side-by-side comparison of the voir dire testimony revealing whether the prosecutor’s reasons for striking black panelists applied with equal force to white panelists who were selected as jurors. There is a simple reason we have no such comparison: the trial court engaged in no step-three analysis where such a comparison could be made. It is a patently unreasonable application of federal law to allow the Wisconsin courts to redefine Batson as a two-step test.
I therefore respectfully dissent.